UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DEBRA DIBELLA,

        Plaintiff,                              Civil Action No. 21-cv-11142

vs.                                            HON. MARK A. GOLDSMITH

COMMISSIONER OF SOCIAL
SECURITY,

        Defendant.

_____/

**OPINION & ORDER**
**(1) OVERRULING PLAINTIFF'S OBJECTIONS (Dkt. 16); (2) ADOPTING THE RECOMMENDATION CONTAINED IN THE MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION (R&R) (Dkt. 15); (3) DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT (Dkt. 11); (4) GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (Dkt. 13); AND (5) AFFIRMING THE DECISION OF THE ADMINISTRATIVE LAW JUDGE**

Plaintiff Debra Dibella seeks judicial review of the final decision of the Commissioner of Social Security denying her applications for disability insurance benefits and supplemental security income under the Social Security Act. Dibella and the Commissioner filed cross-motions for summary judgment (Dkts. 11, 13). The magistrate judge issued an R&R recommending that the Court deny Dibella's motion, grant the Commissioner's motion, and affirm the decision of the Administrative Law Judge (ALJ), which became the final decision of the Commissioner when the Appeals Council denied review (Dkt. 15). Dibella filed objections to the R&R (Dkt. 16), and the Commissioner filed a reply to Dibella's objections (Dkt. 17). For the reasons that follow, the Court overrules Dibella's objections and adopts the recommendation contained in the R&R.

# I. BACKGROUND

In her applications, Dibella asserted that she could not work due to the following disabilities: fibromyalgia, back problems, memory issues, problem concentrating, brain fog, insomnia, inability to sit or stand for a half hour, neck problems, forgetfulness, and anxiety. R&R at 2. ALJ Beth J. Contorer, engaging in the five-step disability analysis, found at steps one and two that Dibella had not engaged in substantial gainful activity since the alleged onset date of her disability, and that Dibella had the following severe impairments: obesity, fibromyalgia, and degenerative disc disease of the lumbar spine. Id. at 4. However, at step three, the ALJ found that Dibella's impairments, whether considered alone or in combination, do not meet or medically equal a listed impairment. Id. Further, the ALJ found that Dibella had a residual functional capacity (RFC) to perform light work with certain limitations. Id. At step four, the ALJ found that Dibella is capable of performing her past relevant work as a "telephone call center operator" and "manager – industrial cafeteria." Id. at 5.

On appeal, Dibella made three arguments, all of which "essentially stem from the ALJ's determination that her non-severe impairment of anxiety 'does not cause more than minimal limitation in [her] ability to perform the 'mental demands' of her past relevant work 'as actually and generally performed.'" Id. at 6 (citing Soc. Sec. Tr. at PageID.51, 58 (Dkt. 9)) (emphasis and brackets in R&R). First, Dibella argued that the ALJ failed to appropriately assess the persuasiveness of a neuropsychological evaluation from her neuropsychologist, Dr. Dana Connor. Id. at 7. Second, Dibella argued that substantial evidence does not support the ALJ's assessment of medical opinions from the state agency doctor, Dr. Jerry Csokasy, and Dibella's treating physician, Dr. Prizy Job. Id. Finally, Dibella argued that substantial evidence does not support

the ALJ's decision because the ALJ failed to consider the effects of Dibella's "mild mental limitations" on her RFC. The magistrate judge found that all three arguments lacked merit. Id.

### A. Dr. Connor's Neuropsychological Evaluation

Dibella argued that the ALJ failed to assess the persuasiveness of the neuropsychological evaluation from Dr. Connor, perhaps because the ALJ did not consider the evaluation to be a "medical opinion." Id. at 7 (citing Dibella Mot. for Summ. J. at PageID.736 (Dkt. 11)). Dibella asserted that the evaluation was a medical opinion because it involved psychiatric and cognitive functioning tests, as well as recommendations based on the results of those tests. Id. at 9.

The term "medical opinion" is defined in 20 C.F.R. § 404.1513(a)(2) as "a statement from a medical source about what you can still do despite your impairment(s) and whether you have one or more impairment-related limitations or restrictions" in particular abilities, including "[y]our ability to perform mental demands of work activities, such as understanding; remembering; maintaining concentration, persistence, or pace; carrying out instructions; or responding appropriately to supervision, co-workers, or work pressures in a work setting[.]" 20 C.F.R. § 404.1513(a)(2). Dibella, however, did not identify any specific statement in the evaluation pertaining to a mental functional limitation in work activities. R&R at 9.

Dibella pointed to Dr. Connor's finding that a separate objective measure of personality and psychological functioning was consistent with an individual experiencing anxiety, significant somatic concerns, and interpersonal difficulties, among other challenges. Id. at 9 (citing Dibella Mot. for Summ. J. at PageID.737). The magistrate judge, however, found that even if these were considered diagnoses, a mere diagnosis says nothing about the severity of that diagnosis or how that diagnosis limits functioning. Id. (citing Higgs v. Bowen, 880 F.2d 860, 863 (6th Cir. 1988) and Dyson v. Comm'r of Soc. Sec., 786 F. App'x 586, 589 (6th Cir. 2019)).

3

Dr. Connor recommended that Dibella avoid multi-tasking, allow extra time to complete tasks, and take regular breaks, but the magistrate judge found that, in the context of Dr. Connor's evaluation, these recommendations could not be construed as a finding that Dibella had specific functional limitations. Id. at 10. Instead, they were merely strategies that might be useful to help Dibella maximize her cognitive efficiency; several of them at least "c[ould] be useful even for those with normal cognitive functioning," according to Dr. Connor. Id. at 10 (quoting Soc. Sec. Tr. at PageID.417) (punctuation modified).

Because Dr. Connor's evaluation did not identify whether Dibella had any impairment-related limitations or restrictions, the magistrate judge concluded that it was not a medical opinion and, therefore, that the ALJ was not required to specifically assess its persuasiveness. Id.

Dibella argued, in the alternative, that even if Dr. Connor's evaluation was not a medical opinion, the ALJ was required to consider Dr. Connor's findings. Id. at 10–11. The magistrate judge found that the ALJ did consider Dr. Connor's findings—as Dibella conceded, "the ALJ mentioned some of Dr. Connor's findings in her decision," and "[a]n ALJ can consider all the evidence without directly addressing in [her] written decision every piece of evidence submitted by a party." Id. at 11 (quoting Dibella Mot. for Summ. J. at PageID.738) (punctuation modified).

The magistrate judge determined that substantial evidence supported the ALJ's assessment that Dr. Connor's evaluation ultimately "confirmed normal cognitive functioning," as Dr. Connor found that Dibella's "neurocognitive profile was largely within expectations for her age and level of education," that any "difficulties on testing [we]re thought to represent normal cognitive variability," that "performance in the[] domains [of subjective attention and memory difficulties] were entirely within the normal range," and that "there [was] no indication of neurodegenerative

4

process at this time." Id. at 11–12 (quoting Soc. Sec. Tr. at PageID.416, 422) (punctuation modified).

### B. Medical Opinions from Dr. Csokasy and Dr. Job

Dibella also challenged the ALJ's assessment of medical opinions from Dr. Csokasy and Dr. Job, but the magistrate judge found the ALJ's assessment of both was supported by substantial evidence. Id. at 13.

### i. Dr. Csokasy's September 10, 2019 Opinion

In September 2019, Dr. Csokasy concluded that "Dibella had (1) 'mild' limitations as to her ability to understand, remember, or apply information; interact with others; and adapt or manage oneself; but (2) 'moderate' limitations as to her ability to concentrate, persist, or maintain pace." Id. at 13 (quoting Soc. Sec. Tr. at PageID.125). Dr. Csokasy noted that according to Dr. Connor's neuropsychological evaluation, Dibella demonstrated an "up and down mood" and was "anxious throughout the [] interview and during testing," but that she was "alert and oriented x4" with "linear and goal directed thought processes," that she performed adequately on "formal and embedded measures of task engagement," and that her "neurocognitive profile was largely within expectations for her age and level of education." Id. (quoting Soc. Sec. Tr. at PageID.125) (punctuation modified). Dr. Csokasy also noted that Dibella's self-reported "ADLs," or Activities of Daily Living, "indicate difficulty with memory, understanding, & following instructions," and that she "[d]oesn't handle[] stress or changes well." Id. (quoting Soc. Sec. Tr. at PageID.125) (punctuation modified). Dr. Csokasy concluded that Dibella "is able to perform simple/routine tasks on a sustained basis in low stress environment." Id. (quoting Soc. Sec. Tr. at PageID.125) (punctuation modified).

5

The ALJ found that Dr. Csokasy's opinion was "of little persuasive value" because it appeared to be based solely on Dibella's self-reported complaints rather than on the clinical findings from the neuropsychological evaluation. Id. at 14 (quoting Soc. Sec. Tr. at PageID.57) (punctuation modified). Additionally, the ALJ found that "a more longitudinal view of the record supports the claimant's decision to cease formal mental health treatment due to improvement in symptoms," as "[l]ater evaluations from other treating physicians do not support significant symptoms of anxiety which would support the limitation proposed by Dr. Csokasy." Id. (quoting Soc. Sec. Tr. at PageID.57) (punctuation modified). Dibella argued that Dr. Csokasy's opinion was not in fact based solely on Dibella's complaints because Dr. Csokasy summarized findings from the neuropsychological examination and cited them in all caps. Id. at 14 (citing Dibella Mot. for Summ. J. at PageID.741).

The magistrate judge found that the ALJ's conclusion that Dr. Csokasy's opinion was based solely on Dibella's allegations was supported by substantial evidence because those subjective reports of difficulties related to memory, understanding, following instructions, and dealing with stress/changes were inconsistent with the findings of the neuropsychological exam—which reflected a normal range of cognitive functioning—and with Dr. Csokasy's summary of the exam. Id. at 15–16 (citing Dibella Mot. for Summ. J. at PageID.741 and citing Soc. Sec. Tr. at PageID.123).

Dr. Csokasy did note Dr. Connor's observation that Dibella presented with an "up and down" or "anxious" mood, but the magistrate judge concluded that Dibella failed to explain how this observation "required the ALJ to find that [Dibella] is limited to working in a 'low stress environment' and 'moderately limited in concentration, persistence, and maintaining pace.'" Id. at 15–16 (citing Lee v. Comm'r of Soc. Sec., No. 19-10337, 2020 WL 1139710, at *6 (E.D. Mich.

6

Mar. 9, 2020)) (stating the claimant "bears the burden of proving the existence and severity of limitations caused by [her] impairments" and "that [s]he has a more restrictive RFC than that assessed by the ALJ").

### ii. Dr. Job's May 31, 2019 and October 10, 2019 Opinions

On May 31, 2019, Dr. Job opined that Dibella "has a 'mental' impairment that 'substantially limit[s]' her ability for 'stress management,' her 'anxiety makes it difficult to handle stressful situations,' and her 'stress exacerbates anxiety.'" R&R at 17 (quoting Soc. Sec. Tr. at PageID.699–700). On October 10, 2019, Dr. Job opined that Dibella "has a 'mental' impairment that 'limit[s]' her 'stress management,' her 'anxiety' made it 'hard [for her] to handle stressful situations,' and her 'stress causes anxiousness.'" Id. (quoting Soc. Sec. Tr. at PageID.695–696). The ALJ found Dr. Job's opinions to be "minimally persuasive" because "Dr. Job's records do not support any clinical observations." Soc. Sec. Tr. at PageID.56.

Dibella argued that the ALJ's statement that there were no clinical observations was misleading, because the cited report did not contain a category for psychological observations, and because the visit at issue was a telemedicine appointment, which "presumably" prevented a full physical examination. R&R at 18 (citing Dibella Mot. for Summ. J. at PageID.742). The magistrate judge concluded that these arguments lacked merit, and that substantial evidence supported the ALJ's assessment because the notes "expressly document '<u>objective</u>' findings on 'Neurological' exams indicating that Dibella's 'mental status' was 'alert and oriented to person, place, and time' with no other remarkable findings, despite <u>subjective</u> reports of 'worsening anxiety.'" Id. (quoting Soc. Sec. Tr. at PageID.432, 703-04) (emphasis in R&R).

Dibella then argued that the ALJ ignored Dr. Job's observation of an anxious mood in February 2019 and that the ALJ may not have assessed the supportability and consistency of Dr.

7

Job's opinions as required by regulations. Id. The magistrate judge found this argument to be without merit, as the ALJ explicitly determined that Dr. Job's findings were inconsistent with his clinical findings in that his records did not support any clinical observations. Id. at 18–19. In addition, Dr. Job's one observation of an anxious mood was insignificant in light of providers predominantly assessing normal cognitive functioning based on orientation, attention span, concentration, memory, fund of knowledge, insight, and judgment despite an anxious mood. Id. (citing Soc. Sec. Tr. at PageID.416, 419, 434–435, 666–667, 679, 683, 687, 691).

### C. Evidence Supporting the ALJ's RFC Determination

Dibella also argued that remand was required because the ALJ did not explicitly consider any mild limitations resulting from her anxiety in the RFC determination. R&R at 19. The magistrate judge found this argument to be without merit because the RFC does not have to reflect impairments that do not result in functional limitations, the ALJ determined that Dibella's anxiety caused no more than minimal limitations and the RFC sufficiently accommodated limitations arising from any of her impairments, and the ALJ stated that she had considered all of Dibella's symptoms and impairments, including those that were not severe. Id. at 19–21.

## II. ANALYSIS

The Court reviews de novo those portions of the R&R to which a specific objection has been made. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). Under 42 U.S.C. § 405(g), this Court's "review is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made pursuant to proper legal standards." Ealy v. Comm'r of Soc. Sec., 594 F.3d 504, 512 (6th Cir. 2010) (punctuation modified). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Lindsley v. Comm'r of Soc. Sec., 560 F.3d 601, 604 (6th Cir. 2009) (punctuation modified). In

8

determining whether substantial evidence exists, the Court may "look to any evidence in the record, regardless of whether it has been cited by the ALJ." Heston v. Comm'r of Soc. Sec., 245 F.3d 528, 535 (6th Cir. 2001). "[T]he claimant bears the burden of producing sufficient evidence to show the existence of a disability." Watters v. Comm'r of Soc. Sec. Admin., 530 F. App'x 419, 425 (6th Cir. 2013).

Dibella raises two objections to the R&R. First, Dibella objects that the R&R failed to discuss all of Dr. Csokasy's explanations for his mental RFC assessment of Dibella. Obj. to R&R at 2. Second, Dibella objects that the magistrate judge's recommendation not to find error in the ALJ's discounting of Dr. Job's medical opinion was based on certain neurological findings in the record, including that Dibella was alert and oriented. Dibella argues, however, that the neurological examinations at issue are distinct from psychological observations, and therefore do not justify the ALJ's rejection of Dr. Job's opinion. Id. at 6.

**A. First Objection**

Dibella objects that the R&R failed to discuss all of Dr. Csokasy's explanations for his mental RFC assessment, which included a summary of additional portions of Dibella's neuropsychological assessment that were not considered by the ALJ.

**i. Whether Dr. Csokasy's Opinion Was Based Solely on Subjective Complaints, Rather than on Clinical Findings**

Dibella argues that—despite the magistrate judge's conclusion to the contrary—it was error for the ALJ to find that Dr. Csokasy's mental RFC assessment was based solely on Dibella's subjective allegations, rather than on the clinical findings of the neuropsychological evaluation. Obj. to R&R at 2. Dibella argues that the fact that Dr. Csokasy cited Dr. Connor's observations of Dibella's "anxious or up-and-down mood" undermines the ALJ's conclusion that Dr. Csokasy's

9

opinion was <u>solely</u> based on Dibella's subjective claims, rather than on clinical findings. Id. at 2.

The magistrate judge acknowledged these citations but determined that Dibella failed to prove "how an observation of an anxious or up-and-down mood . . . required the ALJ to find that she is limited to working in a 'low stress environment' and 'moderately' limited in concentration, persistence, and maintaining pace." R&R at 15. Dibella asserts that the magistrate judge's reasoning "miss[ed] the point," because she is not arguing that these observations required the ALJ to reach particular conclusions. Obj. to R&R at 2. Instead, she is arguing that Dr. Csokasy's citations to these observations undermine the ALJ's decision to discount the medical opinion because it was based solely on Dibella's subjective complaints and therefore was not supported.

On review, this Court's task is "limited to determining whether the Commissioner's decision is supported by substantial evidence and was made pursuant to proper legal standards." Lindsley, 560 F.3d at 604 (punctuation modified). Even assuming that Dr. Csokasy considered Dr. Connor's observation of Dibella's anxious mood and that Dr. Csokasy's opinion was, therefore, based almost exclusively on Dibella's subjective allegations, or primarily on Dibella's subjective allegations, substantial evidence supports the ALJ's conclusion that this opinion was "of little persuasive value."

As outlined by the magistrate judge, Dibella's self-reported difficulties were inconsistent with the findings of Dr. Connor's neuropsychological exam and with Dr. Connor's summary of that exam. R&R at 15–16. While Dibella alleged limitations related to concentration, memory, understanding, following instructions, and handling stress and changes, Dr. Connor reported that Dibella was "alert and oriented," that she had "linear and goal directed" thought processes, that she performed adequately on "formal and embedded measures of task engagement," and that her "neurocognitive profile was largely within expectations for her age and level of education." Id. at

10

15 (quoting Soc. Sec. Tr. at PageID.125) (punctuation modified).

Dibella fails to explain how observation of an anxious or up-and-down mood would support Dr. Csokasy's conclusion that she is moderately limited in her abilities to concentrate, persist, and maintain pace, or how an anxious or up-and-down mood would undermine Dr. Connor's assessment that her neurocognitive profile was ultimately within expectations for her age and level of education. See Lee, 2020 WL 1139710, at *6 (stating that "it is [the claimant]'s burden to prove that [s]he has a more restrictive RFC than that assessed by the ALJ").

Dibella points out that additional findings from Dr. Connor's report were considered by the state agency doctors, and that these findings included "an impaired score in isolated verbal set-shifting[,] isolated deficiencies in semantic fluency, fund of information, verbal abstraction, and problem solving." Obj. to R&R at 3. However, Dibella herself acknowledges that "Dr. Connor considered these deficiencies to be within normal variations in a large battery assessment and likely reflected Dibella's 'longstanding' academic weaknesses consistent with her being in special education as a child[.]" Id. at 3 n.1. Dibella says, however, that Dr. Connor "could not rule out the possibility of mild left hemispheric disruption from a cerebrovascular cause [of these deficiencies], especially in the presence of relative weaknesses in right hand motor function." Id. (citing Soc. Sec. Tr. at PageID.111) (emphasis in Obj. to R&R).

Dibella does not explain why the ALJ should have credited a cause that Dr. Connor "could not rule out," rather than a cause Dr. Connor identified as "likely." In addition, Dibella does not explain how an alternate cause of the deficiencies should have had any impact on Dr. Connor's assessment that "these deficiencies [were] within normal variations in a large battery assessment," or why an alternate cause of the deficiencies should have resulted in a different RCF finding by the ALJ. Dr. Connor's finding of "a rate of speech" that "was generally normal but fast at times,"

11

was also included in the findings considered by the doctors, Obj. to R&R at 3, but Dibella does not explain how this could have supported Dr. Connor's assessment of a moderate limitation and the need for a low-stress environment. See Lee, 2020 WL 1139710, at *6.

Next, Dibella points to evidence contained in records from Henry Ford Health that were "presumably" reviewed by Dr. Csokasy in arriving at his opinion. Obj. to R&R at 3. Dibella points out that Dr. Csokasy referred to diagnoses from Henry Ford and argues that this indicates Dr. Csokasy reviewed the full records from Henry Ford, which contained "additional information to accompany the diagnoses, including indications of an anxious mood on examination, along with reported symptoms of restlessness, fatigue, difficulty concentrating, irritability, and sleep problems." Id. at 3–4 (citing Soc. Sec. Tr. at PageID.445).

The fact that Dr. Csokasy may have reviewed additional evidence—which was not cited in his opinion—does not warrant a finding that the ALJ erred by concluding that the opinion was actually based on Dibella's self-reported complaints rather than on clinical findings.

**ii. Support for Dibella's Decision to Cease Mental Health Treatment**

The ALJ's conclusion that Dr. Csokasy's opinion was based on Dibella's allegations, rather than on clinical findings, is supported by substantial evidence and is not undermined by Dibella's objections. The ALJ, however, also discounted Dr. Csokasy's opinion because it was not supported by later evidence in the record. Soc. Sec. Tr. at PageID.57 ("Later evaluations from other treating physicians do not support significant symptoms of anxiety which would support the limitation proposed by Dr. Csokasy. Accordingly, the undersigned finds his opinion to be of little persuasive value.").

The magistrate judge found that this conclusion was supported by substantial evidence because Dibella's treatment notes contain predominantly normal neuropsychological findings

12

"except for an anxious mood, which 'says nothing about the severity of the condition.'" R&R at 16 n.5 (quoting Higgs, 880 F.2d at 863).

Dibella argues that the ALJ erred by finding the record supported Dibella's decision to cease mental health treatment, given Dr. Job's recommendation that Dibella return to therapy in June 2020 when she reported worsening anxiety. Obj. to R&R at 4 (citing Soc. Sec. Tr. at PageID.703–704). The cited doctor's note simply records Dibella's complaint of "worsening anxiety," without describing the severity, as well as Dibella's self-report that she "gets SOB [short of breath] from time to time and she thinks it is from anxiety." Soc. Sec. Tr. at PageID.703–704. While Dr. Job advised her to attend psychotherapy, id. at PageID.704, this note does not undermine the ALJ's conclusion that "[l]ater evaluations from other treating physicians do not support significant symptoms of anxiety which would support the limitation proposed by Dr. Csokasy." Id. at PageID.57 (emphasis added).

Dibella argues that the ALJ's conclusion is also inconsistent with Dr. Job's recommendation that Dibella continue with therapy the month before she stopped attending. Obj. to R&R at 4 (citing Soc. Sec. Tr. at PageID.432). On September 6, 2019, Dr. Job's notes, under "Anxiety," state, "Encouraged her to continue with psychotherapy and take antianxiety medication as instructed[.]" Soc. Sec. Tr. at PageID.432. This note does not itself document any symptoms of anxiety; Dr. Job did not prescribe any new anxiety-related treatments, see id.; Dibella later ceased therapy of her own accord; Dibella appears to have only complained of worsening anxiety one time since ceasing therapy, see id. at PageID.703–704; and Dibella does not claim to have resumed therapy. Given the "predominantly normal neuropsychological findings throughout Dibella's treatment notes," R&R at 16 n.5, the ALJ's conclusion on this point was supported by

13

substantial evidence.

Dibella also argues the ALJ did not build an "accurate and logical bridge" between the evidence and her conclusion. Obj. to R&R at 6 (quoting Bazzi v. Comm'r of Soc. Sec., No. 20-10963, 2021 WL 4167209, at *3 (E.D. Mich. Sept. 14, 2021)). In Bazzi, the court upheld a claimant's objection to the ALJ's decision to discount a doctor's opinion that the claimant had moderate difficulties maintaining concentration, persistence, or pace where the ALJ did not identify any evidence to support discounting the opinion. Id. at *3-*4. Here, by contrast, the ALJ clearly identified her reasons for discounting Dr. Csokasy's opinion and cited record evidence in support of this conclusion. See Soc. Sec. Tr. at PageID.57.

Dibella asserts that "there is no opinion in the record to support the ALJ's conclusion that Dibella's mental impairments were non-severe and would impose no limitations in a work setting." Obj. to R&R at 5. As the magistrate judge correctly noted, however, Dibella did not challenge the ALJ's finding that her anxiety was non-severe, so she has waived any challenge on this front. R&R at 6 n.2 (citing Kennedy v. Comm'r of Soc. Sec., 87 F. App'x 464, 466 (6th Cir. 2003)) (holding that undeveloped claims are waived).

**B. Second Objection**

Dibella objects that Dr. Job's findings on neurological examination are distinct from psychological observations, and therefore do not explain the ALJ's rejection of Dr. Job's opinion based on her clinical findings. Obj. to R&R at 6. Dibella argues that the magistrate judge largely relied on findings that she was alert and oriented as support for the ALJ's conclusion, but that such findings were the result of brief assessment tests designed to detect disorientation or memory problems, not the result of assessments designed to evaluate mental health problems like anxiety. Id. Dibella argues that these assessments, therefore, do not indicate that she was free of anxiety

14

symptoms. However, the fact that objective findings as to these tests were recorded, and no objective clinical findings related to anxiety were recorded—despite Dibella's subjective reports of increased anxiety—provides substantial support for the ALJ's decision to discount Dr. Job's opinion as inconsistent with clinical findings. See R&R at 18 (citing Soc. Sec. Tr. at PageID.432, 703–704). In addition, the magistrate judge relied not only on findings of normal cognitive functioning based on orientation and attention, but based on concentration, memory, fund of knowledge, insight, and judgment as well. See id. at 19.

Dibella points out that while Dr. Job observed an anxious mood only once, this observation was consistent with Dibella's therapist's observations that Dibella regularly presented with an anxious mood. Obj. to R&R at 7. However, providers generally assessed Dibella to have normal cognitive functioning, despite an anxious mood. R&R at 19. A therapist's more frequent observation of an anxious mood does not require the ALJ to have granted more weight to Dr. Job's opinions.

Finally, Dibella argues that the magistrate judge found that the ALJ complied with regulatory obligations to discuss the consistency and supportability of medical opinions simply because the ALJ used the words "consistent" and "support" in her discussion of Dr. Job's opinions, but that the ALJ did not actually comply with the requirement to explain how she applied these factors. Obj. to R&R at 8 (citing Hardy v. Comm'r of Soc. Sec., 554 F. Supp. 3d 900, 909 (E.D. Mich. 2021) (finding that "[r]esorting to boilerplate language to support a finding of unpersuasiveness does not satisfy" the ALJ's obligation per 20 C.F.R. §§ 404.1520c(b) and 416.920c(b) to explain how the supportability or consistency factors were applied)).

In Hardy, a claimant's objection was upheld where the ALJ provided a summary of the record evidence, including evidence that supported the medical opinions at issue and evidence that

15

undercut the medical opinions at issue, and then summarily discounted the opinions without explaining why she discredited the supportive evidence and credited the conflicting evidence. Id. at *906–*909. While the magistrate judge in that case detailed the evidence the ALJ could have cited in support of her position and "outline[d] a theoretical path that the ALJ could have followed," this was insufficient. Id. at *907-*908.

Here, the ALJ outlined a logical path between the evidence and her conclusions as to consistency and supportability. Dr. Job's opinions were not consistent with his own clinical findings, because his records did not support any clinical findings. See Soc. Sec. Tr. at PageID.56 (citing Exhibits 5F/6 and 15F); see also id. at PageID.54 ("To date, no other doctor other than Dr. Job has provided any restriction on the claimant's functionality."). Dibella argues that the ALJ missed contradictory evidence, "including Dr. Job's initial objective assessment of an anxious mood, and documentation of a worsening of anxiety symptoms in more recent reports." Obj. to R&R at 8. However, as discussed by the magistrate judge, observation of an anxious mood does not undermine the ALJ's decision to discount Dr. Job's opinion where providers predominantly found normal cognitive functioning despite such moods. R&R at 19.

### III. CONCLUSION

For the foregoing reasons, the Court overrules Dibella's objections (Dkt. 16), adopts the magistrate judge's recommendation (Dkt. 15), grants the Commissioner's motion for summary judgment (Dkt. 13), denies Dibella's motion for summary judgment (Dkt. 11), and affirms the ALJ's decision.

SO ORDERED.

Dated: September 23, 2022  s/Mark A. Goldsmith
       Detroit, Michigan    MARK A. GOLDSMITH
                            United States District Judge